IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KEITH MARRISSETTE, #M-10855,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **CASE NO. 11-cv-1143-JPG** |
| ) | |
| **GLADYSE TAYLOR,** ) | |
| **JODY GOETTING, ALLEN MARTIN,** ) | |
| **RANDY DAVIS, ROBINSON,** ) | |
| **K. DEEN, THERESA KISRO,** ) | |
| **PHILLIP L. BAILEY,** ) | |
| **MARCUS T. MARVIN, HEARTMAN,** ) | |
| **and HARRIS,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He is nearing the end of a five year sentence for obstruction of justice and violation of an order of protection. Plaintiff claims that he was improperly held in segregation for 90 days, after the disciplinary charges that caused him to be placed there were expunged, and that the conditions in his segregation cell were intolerably cold. The events giving rise to his claims began while he was incarcerated in Shawnee Correctional Center ("Shawnee"), and continued during his confinement at Pinckneyville.

Specifically, Plaintiff alleges that while he was at Shawnee, he was placed on "room restriction" on November 21, 2010, but was not notified of that restriction at the time. The following day, despite the restriction, guards allowed Plaintiff out of his cell for breakfast and

other activity. While he was in the gym, two officers took him back to his cell, and he was sent to segregation and issued a disciplinary ticket (Doc. 1, p. 9). Only after the ticket was issued was Plaintiff finally given notice of the room restriction. Defendants Marvin and Bailey conducted Plaintiff's disciplinary hearing on December 3, 2010, but refused to call any of Plaintiff's requested witnesses. Plaintiff's original punishment of 90 days in segregation was expunged effective December 3, 2010 (Doc. 1, pp. 17, 21). Plaintiff asserts the expungement was approved on December 28, 2010, by Defendant Martin (the Shawnee warden). However, he was not released from segregation at that time. Instead, he was transferred on December 29, 2010, to the segregation unit at Pinckneyville.

Soon after his arrival, Plaintiff spoke to Defendant Kisro (a counselor), who informed him for the first time that his ticket had been expunged on December 3, and he should write to the warden in order to be released from segregation. Plaintiff wrote to Defendants Davis (the Pinckneyville warden) and Goetting (Pinckneyville clinical services supervisor), but got no response. He then filed a grievance on January 4, 2011 (Doc. 1, pp. 10, 23-24). The grievance was returned to him by Defendant Heartman (Pinckneyville counselor), who told him it must be sent to the Administrative Review Board ("ARB") in Springfield because Plaintiff came from another facility. Plaintiff did so, but did not receive the ARB's response until after his release from segregation (Doc. 1, p. 25). He was put back into general population on March 9, 2011 (Doc. 1, p. 10).

As a result of Plaintiff's grievance, Defendant Deen recommended that he be given his state pay that he would have earned if he had not been wrongly held in segregation, and Plaintiff did receive this pay. However, Defendant Deen did not recommend he be awarded the

educational good conduct credit of 45 days that he could have earned had his participation in his educational course not been interrupted by the confinement in segregation (Doc. 1, pp. 11, 21). Plaintiff also asserts he could have been eligible for another 45 days of educational good conduct credit if he had been released earlier from segregation in accordance with the expungement order (Doc. 1, p. 12).

After coming out of segregation, Plaintiff also requested a transfer. Defendant Kisro put in a transfer request to East Moline Correctional Center, but it was denied (Doc. 1, p. 11). Plaintiff blames Defendant Kisro for failing to follow up on the transfer request.

While he was in segregation at Pinckneyville, Plaintiff complained to Defendants Heartman, Robinson, and Harris (correctional officers) about the extremely cold conditions in his cell. The windows were broken and would not close properly, making it difficult for Plaintiff (who has asthma) to breathe the cold air (Doc. 1, pp. 10, 12, 14). However, these Defendants refused to turn on the heat, provide him with a blanket or warm clothes, or move him to another cell.

Not only was Plaintiff wrongly confined in segregation for over 90 days, he claims that the disciplinary ticket contributed to the termination of his parental rights to his two children. Defendant Heartman told a child welfare worker that Plaintiff was in segregation due to what he assumed were disciplinary problems. In fact, these remarks were untrue because the disciplinary ticket had been expunged. Defendant Heartman's statement was used in a report submitted to the Champaign County Circuit Court, which terminated Plaintiff's parental rights (Doc. 1, p. 35).

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the complaint. Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has

articulated a colorable federal cause of action against Defendants Goetting, Martin, Davis, Bailey, Marvin, and Heartman for deprivation of a liberty interest without due process, when they failed to remove him from segregation after his charges were expunged (Count 1). Plaintiff may also proceed on his claim against Defendants Heartman, Harris, and Robinson for cruel and unusual punishment due to the inhumane cell conditions in segregation (Count 2).

As to Defendant Heartman, Plaintiff also claims a denial of due process based on Defendant Heartman's statement to a child welfare worker regarding Plaintiff being placed in segregation for disciplinary problems (Count 3). This assertion fails to state a constitutional claim. The March 11, 2011, report to the state circuit court, which Plaintiff attaches (Doc. 1, pp. 32-39), evaluates Plaintiff's history with respect to his children, and includes both positive and negative observations of his progress, of which Defendant Heartman's statement is only one part. Plaintiff states that the circuit court judge's decision to terminate his parental rights was made five months later on August 9, 2011, based on the content of this report. What role the statement by Defendant Heartman played in the termination ruling is mere speculation. If there was any deprivation of Plaintiff's due process rights (an assertion this Court finds highly dubious), it came about in the state court proceeding which terminated Plaintiff's parental rights. That is a question which cannot be addressed in the context of this civil rights action. Accordingly, Count 3 shall be dismissed.

Plaintiff's claims against Defendants Taylor, Kisro, and Deen shall also be dismissed pursuant to 28 U.S.C. § 1915A. Plaintiff fails to state a claim against Defendant Taylor (acting director of the Illinois Department of Corrections), because the doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001)

(citations omitted). Plaintiff states only that Defendant Taylor failed to take action when he appealed his wrongful confinement imposed by her subordinates. This does not amount to an allegation that Defendant Taylor was "personally responsible for the deprivation of a constitutional right." *Id.* *See also Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) (supervisor who has delegated responsibilities to others does not incur liability merely through being informed of prisoner's complaint).

Defendant Kisro simply told Plaintiff, upon his arrival at Pinckneyville, of the procedure to seek release from segregation (writing to the warden) (Doc. 1, p. 10). She had no further involvement in the handling of his requests to be released. Plaintiff's only other allegation against her arose months after he came out of segregation, when he applied for a transfer to another prison, but was denied (Doc. 1, p. 11). There is no indication that Defendant Kisro made the ultimate decision to deny the transfer. More importantly, no constitutional right is implicated by the denial of a transfer. "[P]risoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison). Accordingly, Plaintiff states no claim against Defendant Kisro, and she shall be dismissed from the action.

Likewise, Plaintiff's allegations against Defendant Deen fail to state a cognizable claim. Defendant Deen made recommendations in response to Plaintiff's grievances, in which he asked to be awarded the educational good conduct credits that he believes he would have earned if he had been allowed to complete his classes. She recommended against granting the credits, and also

recommended he not be restored to A grade or transferred (Doc. 1, p. 11-13). First, Plaintiff's belief that he would have earned up to 90 days of educational good conduct credits if he had not been interrupted by the wrongful stay in segregation, while plausible, is speculative at best. There was no guarantee that he would have earned those credits even if he had not been forced to exit the educational program when he was placed in segregation. Secondly, an inmate has no constitutional claim where he files a grievance, and simply disagrees with the outcome. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (plaintiff's argument that conspiracy by prison officials to deny administrative review of his grievances by dismissing them was frivolous where plaintiff had access to the grievance procedure but he did not obtain the outcome he desired). Finally, as noted above, Plaintiff has no constitutional right to a reclassification or transfer. *DeTomaso*, 970 F.2d at 212. Defendant Deen shall be dismissed from this action.

**Disposition**

Defendants **TAYLOR, DEEN,** and **KISRO** are **DISMISSED** from this action with prejudice. **COUNT 3** against **DEFENDANT HEARTMAN** is dismissed with prejudice for failure to state a claim.

As to **COUNTS 1** and **2,** the Clerk of Court shall prepare for Defendants **GOETTING, MARTIN, DAVIS, ROBINSON, BAILEY, MARVIN, HEARTMAN,** and **HARRIS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take

appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Philip M. Frazier** for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED: September 14, 2012

                                          *s/J. Phil Gilbert*
                                          **United States District Judge**